IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL<br>1331 G Street, NW, Suite 300<br>Washington, DC 20005<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>Office of the General Counsel<br>245 Murray Lane, SW<br>Mail Stop 0485<br>Washington, DC 20528-0485<br><br><br>        and<br><br>UNITED STATES CUSTOMS AND<br>BORDER PROTECTION<br>Office of the Chief Counsel<br>1300 Pennsylvania Avenue, NW<br>Washington, DC 20229<br><br>        Defendants. | Civil Action No.  _____ |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1.      This action seeks to compel the U.S. Department of Homeland Security ("DHS")

and its component U.S. Customs and Border Protection ("CBP") to disclose records that the

American Immigration Council ("the Council") requested under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, relating to policies, procedures, and practices used by CBP personnel

to process noncitizens who are seeking asylum and/or who express a fear of returning to their

home countries at or near ports of entry ("POEs") on the U.S.-Mexico border since January 2016 (the "2016 FOIA Request").

2.      Prior to filing the 2016 FOIA Request, the Council read reports indicating that asylum seekers arriving at U.S. POEs along the U.S.-Mexico border were not being processed, but instead, were being refused entry without being given the opportunity to assert a claim for asylum.[1]  The Council filed its 2016 FOIA Request with DHS and CBP in order to better understand—and share with the public—the policies, procedures, and practices employed by CBP at these POEs with respect to the treatment of asylum seekers.

3.      More than a year after the Council filed its 2016 FOIA Request, and only after an administrative appeal and requested mediation, CBP identified 47 pages of responsive documents and produced a scant 16 pages of heavily redacted documents, asserting the rest had been made available to the public.  On May 1, 2018, the Council filed a second administrative appeal, challenging the production as inadequate.  Although more than 20 days have passed since the Council filed its second appeal, CBP has not made a determination with respect to the appeal, nor produced any additional records.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

---

[1] *See* American Immigration Council, et al., Letter Complaint to DHS's Office of Civil Rights and Civil Liberties and Office of the Inspector General Re: U.S. CBP's Systemic Denial of Entry to Asylum Seekers at POEs on U.S.-Mexico Border (Jan. 13, 2017) (hereinafter, "CRCL Letter Complaint"), *available at* https://www.americanimmigrationcouncil.org/sites/default/files/general_litigation/cbp_systemic_denial_of_entry_to_asylum_seekers_advocacy_document.pdf (noting that the Council and other civil rights groups received numerous reports of noncitizens attempting to present themselves for asylum at POEs, but were then turned away by CBP officers who gave various forms of misinformation).

5.      Venue properly rests with this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and

28 U.S.C. § 1391(e)(1)(C) because the Council's principal place of business is in the District of

Columbia.

6.      The Council has exhausted any and all administrative remedies in connection with

the 2016 FOIA Request.  5 U.S.C. § 552(a)(6)(C)(i).

## THE PARTIES

7.      The Council is a non-profit organization established to increase public

understanding of immigration law and policy, advocate for the fair and just administration of our

immigration laws, protect the legal rights of noncitizens, and educate the public about the

enduring contributions of America's immigrants.  Through research and analysis, the Council

has become a leading resource for policymakers and opinion makers at the national, state, and

local levels who seek to understand the power and potential of immigration and to develop

policies that are based on facts rather than myths.  The Council seeks to hold the government

accountable for unlawful conduct and restrictive interpretations of the law and for failing to

ensure that the immigration laws are implemented and executed in a manner that comports with

due process.

8.      The Council is a tax-exempt, not-for-profit organization under § 501(c)(3) of the

Internal Revenue Code.

9.      The Council's principal place of business is at 1331 G Street, N.W., Washington,

DC 20005.

10.      Defendant DHS is a department of the executive branch of the U.S. government

and is an agency within the meaning of 5 U.S.C. § 552(f).

11.      DHS is responsible for enforcing federal immigration laws.

12.     Upon information and belief, DHS has possession and control over the records requested by the Council.

13.     Defendant CBP is a component of DHS, is the largest law enforcement agency in the United States, and is an agency within the meaning of 5 U.S.C. § 552(f).

14.     Among other duties, CBP is responsible for enforcing immigration laws at and between POEs to the United States, including at POEs along the U.S.-Mexico border.

15.     CBP inspects individuals seeking admission to the United States, including U.S. citizens, lawful permanent residents, nonimmigrants, and asylum seekers.

16.     CBP has authority to admit or exclude individuals and has responsibility for the initial screening and processing of asylum seekers when they present themselves for inspection at U.S. POEs.

17.     Upon information and belief, CBP has possession of and control over the records requested by the Council.

## FACTUAL BACKGROUND

### A.     Treatment of Asylum Seekers at Ports of Entry Along the U.S.-Mexico Border

18.     In recent years, children and adults have fled horrendous persecution in their home countries and arrived at POEs along the U.S.-Mexico border to seek protection in the United States through the asylum process.  The vast majority of these individuals come from Guatemala, Honduras, and El Salvador, an area often termed Central America's "Northern Triangle."

19.     After fleeing their home countries, children and adults face an arduous and dangerous journey to the United States.  The situation along the popular migration routes to the

4

United States has been termed a "humanitarian crisis" because of the extraordinary violence faced by those making the journey.[2]

20.     Though the migration of asylum seekers to the U.S.-Mexico border has garnered growing attention, much remains unknown about the specific policies, procedures, and practices employed by CBP personnel in processing these individuals as they arrive at POEs.

21.     CBP officers must inspect all noncitizens who arrive in the United States at a POE, *see* 8 U.S.C. § 1225(a)(3), and determine whether the individual may be admitted to the United States, *see* 8 U.S.C. § 1182(a).  Noncitizens who are physically present in the United States or who arrive in the United States at a POE have a statutory right to apply for asylum.  8 U.S.C. § 1158(a)(1).  If an individual expresses a fear of returning to his or her home country, CBP must either refer the asylum seeker for a credible fear interview or place the asylum seeker into regular removal proceedings by issuing a Notice to Appear, which allows the asylum seeker to pursue an asylum claim before an immigration judge.  *See* 8 U.S.C. §§ 1225(b)(1), 1229, 1229a.

22.     Through its related work and through the work of partner organizations, the Council has discovered that CBP officers consistently have been turning away significant numbers of individuals who express an intent to apply for asylum or a fear of returning to their home countries in potential violation of U.S. and international law.[3]  The FOIA request underlying this lawsuit is meant to shed greater light on the policies, procedures, and practices of CBP at or near POEs along the U.S.-Mexico border.

---

[2] *See* Christine Eguizábal, *et al.*, *Crime and Violence in Central America's Northern Triangle*, The Wilson Ctr., 3 (2015), https://www.wilsoncenter.org/sites/default/files/FINAL%20PDF_CARSI%20REPORT_0.pdf.

[3] *See, e.g.*, CRCL Letter Complaint (detailing examples of asylum seekers who CBP officers turned away at the U.S.-Mexico border).

23.     An understanding of CBP's policies, procedures, and practices regarding the treatment of asylum seekers at or near U.S. POEs is critically important to assist immigration attorneys, advocates, asylum seekers, the news media, and the general public in understanding how the U.S. government treats those seeking safe haven in our country.

## B.     The Council's 2016 FOIA Request

24.     On December 23, 2016, the Council submitted a FOIA request to CBP and DHS seeking any and all documents that relate to the policies, procedures, and practices used by CBP personnel to process noncitizens who are seeking asylum and/or who express a fear of returning to their home countries at or near POEs on the U.S.-Mexico border from January 2016 to the present.  Among other things, the documents requested include:

- Criteria or standards that CBP personnel use to determine whether a noncitizen arriving at or near a POE on the U.S.-Mexico border is seeking asylum and/or has a fear of returning to his or her home country;

- The terms and conditions under which CBP personnel may turn away and/or delay the arrival of a noncitizen seeking asylum and/or who expresses a fear of returning to his or her home country at or near a POE on the U.S.-Mexico border;

- Policies, procedures, recommendations, or guidelines relating to the processing of noncitizens arriving at or near a POE on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their home countries;

- Legal or other agreements governing the collaboration or interaction of CBP personnel with local, state, or federal Mexican government officials regarding the arrival and/or processing of noncitizens seeking asylum and/or asserting fear of return to their countries of origin, at or near POEs on the U.S.-Mexico border;

- Legal or other agreements governing the collaboration or interaction of CBP personnel with private security organizations regarding the arrival and/or processing of noncitizens seeking asylum and/or asserting fear of return to their countries of origin, at or near POEs on the U.S.-Mexico border;

- Training materials or other records used to instruct, guide, or otherwise prepare CBP personnel to process noncitizens arriving at or near POEs on the U.S.-Mexico border, who are seeking asylum and/or express fear of returning to their countries of origin;

- Communications within or among CBP, DHS, or any of their agents, agencies, subagencies, or offices, relating to the processing of noncitizens arriving at or near POEs on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their countries of origin; and

- Communications to or from CBP or DHS relating to the processing of noncitizens arriving at or near POEs on the U.S.-Mexico border who are seeking asylum or express a fear of returning to their countries of origin.

A copy of the 2016 FOIA Request is attached hereto as **Exhibit A**.  Pursuant to 5 U.S.C.

§ 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)(1), the Council also requested a waiver of all fees

related to its 2016 FOIA Request, which was granted on August 21, 2017.  *See* **Exhibit B**.

### C.    Defendants' Response to the 2016 FOIA Request

25.    On January 3, 2017, CBP sent the Council a letter, acknowledging receipt of the

2016 FOIA Request and assigning it tracking number CBP-2017-020151.  In that letter, CBP

stated that "the average time to process a FOIA request related to 'travel/border incidents' is a

minimum of 6 months."  A copy of this CBP letter is attached hereto as **Exhibit C**.

26.    The letter, in direct violation of FOIA, failed to state whether CBP intended to

comply with the request, failed to state the reasons behind that decision, and failed to comply

with numerous other requirements set forth under that statute.  *See* 5 U.S.C. § 552(a)(6)(A).

27.    Having received no substantive response to the 2016 FOIA Request, on October

25, 2017, the Council filed an appeal with CBP on the grounds that CBP failed to respond to the

request within the statutory timeframe.  A copy of the appeal letter is attached hereto as **Exhibit**

**D**.

28.    On November 28, 2017, CBP's FOIA Appeals, Policy and Litigation Branch

responded to the October 25, 2017 appeal letter and assigned it appeal number CBP-AP-2018-

010617 AML.  The response remanded the 2016 FOIA Request to CBP's FOIA Division so that

the FOIA Division could provide an estimate of the length of time required to process the request within 20 days of the remand.  A copy of the response is attached hereto as **Exhibit E**.

29.     On January 10, 2018, having received no estimate from CBP, the Council requested mediation services from the Office of Government Information Services ("OGIS") to assist with the 2016 FOIA Request.  A copy of the mediation request is attached hereto as **Exhibit F**.

30.     On February 21, 2018, counsel for the Council received an email from OGIS explaining that CBP was processing the request.  A copy of the OGIS email is attached hereto as **Exhibit G**.

31.     The Council received CBP's final disposition of the 2016 FOIA Request on February 22, 2018.  The disposition noted that CBP had located 47 pages of responsive records, some of which already were publicly available.  In total, CBP produced 16 pages of heavily redacted documents that CBP concluded were "partially releasable."  A copy of CBP's final disposition is attached hereto as **Exhibit H**.

### D.     Defendants' Production Demonstrates an Inadequate Search for Responsive Records

32.     CBP's February 22, 2018 production demonstrates that CBP conducted an inadequate search for responsive records in violation of FOIA.  The Council is aware of numerous responsive documents in CBP's possession that were not produced in CBP's final disposition, but were produced in a separate matter, *Al Otro Lado v. Nielsen*, 3:17-cv-02366-BAS (S.D. Cal).[4]

---

[4] The *Al Otro Lado* case originally was filed in the Central District of California on July 12, 2017, where it was assigned case number 2:17-cv-05111-JFW-JPR.  The case later was transferred to the Southern District of California, where it was assigned case number 3:17-cv-02366-BAS (S.D. Cal.).  Some of the produced documents reference the original Central District case number.

33.     For example, in that case, CBP produced the following documents that were responsive to the instant FOIA request, but that were not produced here:

- A memorandum and muster on "Processing Expedited Removal Cases," addressed to the Office of Field Operations' Directors of Field Operations and Director of Preclearance Operations, from the Acting Executive Director, Admissibility and Passenger, which discusses requirements to follow under the Immigration and Nationality Act's expedited-removal provisions. *See* **Exhibit I**. This document is responsive to category 1 of the 2016 FOIA Request, which asks for criteria or standards that CBP personnel use to determine whether a noncitizen arriving at or near a POE on the U.S.-Mexico border is seeking asylum and/or has a fear of returning to his or her home country.

- A November 22, 2016 email discussing the existence of a "Mass Migration Plan" sent from the Supervisory Program Manager – Border Security, Laredo Field Office, to "Port Directors," which is responsive to at least category 2 of the 2016 FOIA Request, which asks for the terms and conditions under which CBP personnel may turn away and/or delay the arrival of a noncitizen seeking asylum and/or who expresses a fear of returning to his or her home country at or near a POE on the U.S.-Mexico border. *See* **Exhibit J**.

- A document describing problems encountered at the San Ysidro POE due to "unprecedented levels of foreign nationals asserting claims of fear of returning to their home countries" and processes for dealing with ongoing construction and increased migrant flow, including detailed discussions of metering[5] and its use. *See* **Exhibit K**. This document is responsive to at least category 3(a) of the 2016 FOIA Request, which requests policies, procedures, recommendations, or guidelines relating to the processing of noncitizens arriving at or near a POE on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their home countries, including scheduling appointments for such individuals to present themselves at a POE.

- A September 14, 2016 memorandum from the CBP Office of Field Operations, Admissibility and Passenger Programs and Operations – Incident Management Division, describing the 2016 surge of Haitian immigrants seeking entry to the United States at the San Ysidro POE, including a description of the shelter and metering system. *See* **Exhibit L**. This document is also responsive to at least category 3(a) of the 2016 FOIA Request.

- A November 12, 2016 email from the Assistant Director of Field Operations – Border Security, Laredo Field Office to "Port Directors" discussing a request from the Commissioner and Deputy Commissioner of CBP to begin metering and turn away asylum seekers after a certain number of asylum seekers are processed each day. *See* **Exhibit M**. This document is responsive to at least category 3(e) of the 2016 FOIA Request, which requests policies, procedures, recommendations, or guidelines relating to

---

[5] "Metering" refers to a practice of processing only a certain number of asylum seekers each day at a given U.S. POE and requiring any additional asylum seekers to wait to be processed on a later day.

the processing of noncitizens arriving at or near a POE on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their home countries, including directing such individuals away from a POE.

Given the existence of these, and many other, responsive documents, CBP did not use methods "reasonably calculated to uncover all relevant documents," as required under FOIA. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Valencia-Lucena*, 180 F.3d 321, 326 (D.C. Cir. 1999) (noting that a search's adequacy may be called into substantial doubt by "well defined requests and *positive indications of overlooked materials*" (emphasis added; quotation marks omitted)).

34.     CBP also provided no indication of how it conducted its search, including where it looked for responsive documents within the agency or whether it limited its search to specific types of documents.  The 2016 FOIA Request asked for records from all of CBP, defining CBP to include "CBP headquarters offices, including any divisions, subdivisions or sections therein; CBP field operations offices, including any divisions, subdivisions or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; and/or any other CBP organizational structures." *See* **Exhibit A** at 1 n. 2.  Such an expansive search is necessary given that the Council seeks information as to policies, procedures, and practices applied at various POEs at the U.S.-Mexico border.

35.     CBP's contention that it located only 47 total pages of responsive records strains credulity in light of the scope of the request—which spans two years—and the significant amount of work CBP conducts along the U.S.-Mexico border.  CBP's meager production evinces no more than an inadequate, perfunctory search that fails to meet FOIA requirements.  *See* 5 U.S.C. § 552(a)(3); *Weisberg*, 745 F.2d at 1485.

E.      **The Council's 2018 FOIA Appeal**

36.      On May 1, 2018, the Council filed an administrative appeal of CBP's final

disposition on the grounds that CBP did not conduct an adequate search for responsive records

(the "2018 FOIA Appeal").  A copy of the Council's appeal is attached hereto as **Exhibit N**.

37.      On May 1, 2018, CBP confirmed via email that the appeal was submitted and

assigned it appeal tracking number CBP-AP-2018-052204.  A copy of the confirmation email is

attached hereto as **Exhibit O**.

38.      CBP was required to "make a determination with respect to any appeal" within 20

days.  *See* 5 U.S.C. § 552(a)(6)(A)(ii).  The Council logged into the FOIA account associated

with this appeal and learned of an estimated completion date of June 8, 2018, but did not

otherwise receive affirmative correspondence from CBP about the completion date.  More than

20 days after receipt of the appeal, and after its own estimated completion date, CBP has not

notified the Council of any determination regarding the 2018 FOIA Appeal, nor has CBP

disclosed any additional records.  CBP's failure to respond timely constitutes a constructive

denial of the administrative appeal, such that the Council has exhausted its administrative

remedies.  5 U.S.C. § 552(a)(6)(C)(i).

39.      It is now nearly 20 months since the Council made its 2016 FOIA Request, and

CBP still has failed to make an adequate search for responsive records.  The Council has filed the

current lawsuit to compel the production of responsive records.  The Council will analyze and

post these records on its publicly accessible website.  If the responsive records are voluminous,

the Council also will publish a summary analysis of such information and disseminate that

summary through its established networks.  Disclosure of this information will aid immigration

attorneys in advising their clients, assist non-governmental organizations with ongoing advocacy

efforts, and inform asylum seekers, the news media, and the general public about CBP's policies,

procedures, and practices.

## FIRST CAUSE OF ACTION

### Violation of Freedom of Information Act for Failure to Conduct
### a Reasonable Search and to Disclose Responsive Records

40.     The Council repeats, alleges, and incorporates the allegations in paragraphs 1-39

above, as if fully set forth herein.

41.     Defendants were obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable

search for records responsive to the Council's 2016 FOIA Request, and to promptly produce

them to the Council, including in the format requested by the Council if they are readily

reproducible in that format.

42.     Upon information and belief, CBP has not conducted a reasonable search for

records responsive to the 2016 FOIA Request.

43.     The Council has a legal right to obtain the records requested in the 2016 FOIA

Request, and no legal basis exists for Defendants' failure to search for and disclose them.

44.     Defendants' failure to conduct a reasonable search for and to produce records

responsive to the Council's request violates 5 U.S.C. § 552(a)(3)(A) and (a)(3)(C), as well as the

regulations promulgated thereunder.

## SECOND CAUSE OF ACTION

### Violation of Freedom of Information Act for Failure to Respond within the Time Required

45.     The Council repeats, alleges, and incorporates the allegations in paragraphs 1-44

above, as if fully set forth herein.

46.     Within 20 days (excluding Saturdays, Sundays, and legal public holidays) after

receiving the May 1, 2018 appeal relating to the 2016 FOIA Request, CBP was required under 5

U.S.C. § 552(a)(6)(A)(ii) to "make a determination with respect to any appeal" and notify the Council of its determination.

47.     The Council has received no communication from CBP that contains the determination or the notification required by 5 U.S.C. § 552(a)(6)(A)(ii).

48.     Defendants' failure to respond within the statutory time limit violates 5 U.S.C. § 552(a)(6)(A)(ii), as well as the regulations promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Council requests that judgment be entered in its favor and against Defendants, and that the Court:

(a)     Declare that Defendants' failure to adequately search for records responsive to the Council's 2016 FOIA Request and to disclose such responsive records violates FOIA;

(b)     Declare that Defendants' failure to make a determination in response to the 2018 FOIA Appeal violates FOIA;

(c)     Order Defendants and any of Defendants' departments, components, other organizational structures, agents, or other persons acting by, for, or on behalf of Defendants to conduct a prompt, reasonable search for records responsive to the Council's 2016 FOIA Request;

(d)     Enjoin Defendants and any of Defendants' departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of either Defendant from withholding records responsive to the Council's 2016 FOIA Request and order Defendants to promptly produce the same;

(e)     Award the Council its reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

(f)     Grant all other such relief to the Council as the Court deems just and equitable.

Dated: June 12, 2018

Respectfully submitted,

*/s/ Meaghan VerGow*
Meaghan VerGow (D.C. Bar # 977165)
mvergow@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5414

Catalina Vergara (California Bar #223775)
cvergara@omm.com
*Pro Hac Vice Pending*
Dimitri Portnoi (California Bar #282871)
dportnoi@omm.com
*Pro Hac Vice Pending*
Alexander Slavin (California Bar #292483)
aslavin@omm.com
*Pro Hac Vice Pending*
Kyle Grossman (California Bar #313952)
kgrossman@omm.com
*Pro Hac Vice Pending*
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-7699
Fax: (213) 430-6407

*Attorneys for Plaintiff American Immigration Council*