# Exhibit A



December 23, 2016

<u>VIA ELECTRONIC MAIL</u>

Sabrina Burroughs
FOIA Officer
MS1181
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC  20229-1181

Jonathan Cantor
Acting Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, DC 20528-0655

Re:  <u>Freedom of Information Act (FOIA) Request</u>

Dear FOIA Officers:

      The American Immigration Council ("Immigration Council" or "Requester") submits this letter as a request for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq*.

**1.    REQUEST FOR INFORMATION**

      The Immigration Council requests any and all records[1] that were prepared, received, transmitted, collected and/or maintained by U.S. Customs and Border Protection (CBP)[2] and/or the Department of Homeland Security (DHS) that describe, refer, or relate to the procedures used by CBP personnel, including but not limited to U.S. Border Patrol agents, U.S. Office of Field

---

[1] The term "records" as used herein includes, but is not limited to: communications, correspondence, directives, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training materials, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

[2] The term "CBP" as used herein means CBP headquarters offices, including any divisions, subdivisions or sections therein; CBP field operations offices, including any divisions, subdivisions or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; and/or any other CBP organizational structures.

Operations officers, or private contractors with CBP, to process noncitizens who are seeking asylum and/or who express a fear of returning to their home countries, at or near ports of entry on the U.S.-Mexico border from January 2016 to the present.

The requested records include, but are not limited to, those describing, referring, or relating to:

(1) Criteria or standards that CBP personnel, including but not limited to U.S. Border Patrol agents, U.S. Office of Field Operations officers, or private contractors with CBP, use to determine whether a noncitizen arriving at or near a port of entry on the U.S.-Mexico border is seeking asylum and/or has a fear of returning to his or her home country;

(2) The terms and conditions under which CBP personnel, including but not limited to U.S. Border Patrol agents, U.S. Office of Field Operations officers, or private contractors with CBP, may turn away and/or delay the arrival of a noncitizen seeking asylum and/or who expresses a fear of returning to his or her home country at or near a port of entry on the U.S.-Mexico border;

(3) Policies, procedures, recommendations or guidelines relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their home countries, including but not limited to:

   a. Scheduling appointments for such individuals to present themselves at a port of entry;
   b. Use of tickets or a ticketing system to process such individuals;
   c. Requiring documentation before allowing such individuals to present themselves at a port of entry;
   d. Use of shelters to house such individuals so that they can be processed on later dates;
   e. Directing such individuals away from a port of entry;
   f. Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies and/or private security organizations;
   g. When to apply Section 235(b)(C) of the Immigration and Nationality Act (INA) regarding treatment of noncitizens from contiguous territories;
   h. When to complete Form I-275, Withdrawal of Application for Admission/Consular Notification;
   i. When to complete Form I-867, Record of Sworn Statement in Proceedings under INA § 235(b)(1);
   j. When to issue Form I-860, Notice and Order of Expedited Removal;

(4) Legal or other agreements governing the collaboration or interaction of CBP personnel, including but not limited to U.S. Border Patrol agents, U.S. Office of

        Field Operations officers, or private contractors with CBP, with local, state or federal Mexican government officials regarding the arrival and/or processing of noncitizens seeking asylum and/or asserting fear of return to their countries of origin, at or near ports of entry on the U.S.-Mexico border;

(5)    Legal or other agreements governing the collaboration or interaction of CBP personnel, including but not limited to U.S. Border Patrol agents, U.S. Office of Field Operations officers, or private contractors with CBP, with private security organizations regarding the arrival and/or processing of noncitizens seeking asylum and/or asserting fear of return to their countries of origin, at or near ports of entry on the U.S.-Mexico border;

(6)    Training materials or other records used to instruct, guide or otherwise prepare CBP personnel, including but not limited to U.S. Border Patrol agents, U.S. Office of Field Operations officers, or private contractors with CBP, to process noncitizens arriving at or near ports of entry on the U.S.-Mexico border, who are seeking asylum and/or express fear of returning to their countries of origin;

(7)    Communications, whether electronic or conventional, within or among CBP, DHS, or any of their agents, agencies, subagencies, or offices, relating to the processing of noncitizens arriving at or near ports of entry on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their countries of origin, including but not limited to communications describing, referring, or relating to:
- a. Scheduling appointments for such individuals to present themselves at a port of entry;
- b. Use of tickets or a ticketing system to process such individuals;
- c. Requiring documentation before allowing such individuals to present themselves at a port of entry;
- d. Use of shelters to house such individuals so that they can be processed on later dates;
- e. Directing such individuals away from a port of entry;
- f. Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies and/or private security organizations.

(8)    Communications, whether electronic or conventional, to or from CBP or DHS relating to the processing of noncitizens arriving at or near ports of entry on the U.S.-Mexico border who are seeking asylum or express a fear of returning to their countries of origin, including but not limited to communications describing, referring, or relating to:
- a. Scheduling appointments for such individuals to present themselves at a port of entry;
- b. Use of tickets or a ticketing system to process such individuals;
- c. Requiring documentation before allowing such individuals to present themselves at a port of entry;

        d.        Use of shelters to house such individuals so that they can be processed on later dates;
        e.        Directing such individuals away from a port of entry;
        f.        Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies and/or private security organizations.

The Immigration Council requests that any records that exist in electronic form be provided in their native electronic format on a compact disc, digital video disk, or equivalent electronic medium. Requester asks that any documents stored in Portable Document Format ("PDFs") be provided as individual files in a searchable PDF format. Finally, Requester asks that reasonable metadata be transmitted along with files, including but not limited to maintaining parent-child relationships between emails and their attachments, author information, as well as date and time stamp information. If any of the requested records or information are not kept in a succinct format, we request the opportunity to view the documents in your offices.

All requested records that are responsive may be provided with personally identifying details redacted. FOIA exempts information from disclosure if that disclosure would lead to an unwarranted invasion of privacy. 5 U.S.C. § 552(b)(6). Determination of this exemption requires a balancing of the public's interest in obtaining the information against any possible invasions of privacy which would result from disclosure. *See, e.g., Wood v. FBI*, 432 F.3d 78, 87-89 (2d Cir. 2005). The Supreme Court has held that this balancing act does not preclude the disclosure of military records when names and other private details are redacted. *See Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976). Requester expects the release of all segregable portions of otherwise exempt material.

If, under applicable law, any of the information requested is considered exempt, please describe in detail the nature of the information withheld, the specific exemption or privilege upon which the information is withheld, and whether the portions of withheld documents containing non-exempt or non-privileged information have been provided.

**2.**        **REQUEST FOR WAIVER OF FEES**

We ask that the agency waive all fees associated with this FOIA request. Such a waiver is warranted because disclosure of the information is "…likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of institution). In addition, the Immigration Council has the ability to widely disseminate the requested information. *See Judicial Watch v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) (finding a fee waiver appropriate when the requester explained, in detailed and non-conclusory terms, how and to whom it would disseminate the information it received).

A.   *Disclosure of the Information Is in the Public Interest*

Disclosure of the requested information will contribute significantly to public understanding of government operations and activities related to the processing and treatment of noncitizens seeking asylum and/or expressing fear of return to their countries of origin at ports of entry on the U.S.-Mexico border. Such information is of great public interest given the dramatic increase of asylum-seekers arriving at such ports of entry in recent years. Though the increase of asylum-seekers has garnered growing attention, much remains unknown about the specific policies and procedures employed by CBP personnel in processing these individuals as they arrive at the border. The requested information is critically important to assist attorneys, asylum-seekers, and the general public in understanding how the U.S. government treats those seeking safe haven in our country.

As discussed below, the Immigration Council has the capacity, intent and demonstrated ability to disseminate the requested information to a broad cross-section of the public.

The Immigration Council is a non-profit organization established to increase public understanding of immigration law and policy, advocate for the fair and just administration of our immigration laws, protect the legal rights of noncitizens, and educate the public about the enduring contributions of America's immigrants. Our policy department researches issues related to immigration, and regularly provides information to leaders on Capitol Hill, the media, and the general public. Our legal department works with other immigrants' rights organizations and immigration attorneys across the United States to advance the fair administration of our immigration laws. The Immigration Council has synthesized and disseminated information from prior FOIA requests to facilitate the sharing of this information with a broad public audience. *See*, *e.g.*, *Behind Closed Doors: An Overview of DHS Restrictions on Access to Counsel*, a report summarizing certain key documents released by DHS agencies in response to FOIA requests regarding noncitizens' access to counsel, *available at* https://www.americanimmigrationcouncil.org/research/behind-closed-doors-overview-dhs-restrictions-access-counsel (last visited, Dec. 23, 2016).

The Immigration Council will analyze and post the information obtained through this FOIA request on its publicly accessible website. If the responsive information is voluminous, the Immigration Council also will publish a summary analysis of such information and will disseminate that summary through its established networks. Finally, the Immigration Council has regular contact with national print and news media and plans to share information gleaned from FOIA disclosures with interested media.

B.   *Disclosure of the Information Is Not Primarily in the Commercial Interest of the Immigration Council*

The Immigration Council is a not-for-profit organization. We seek the requested information for the purpose of disseminating it to members of the public who have access to our public website and other free publications, and not for the purpose of commercial gain.

* * *

Border Practices FOIA Request | **American Immigration Council** | December 2016

Thank you for your prompt attention to this request. If you have any questions, please do not hesitate to contact me by telephone or email.

Sincerely,

*Karolina Walters*

Karolina Walters
Staff Attorney
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
Tel.: 202-507-7520
Email: kwalters@immcouncil.org