# Exhibit N



O'Melveny & Myers LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071-2899

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

May 1, 2018

**Dimitri D. Portnoi**
D: +1 213 430 7699
dportnoi@omm.com

**VIA FOIAONLINE**
**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

FOIA Appeals
Policy and Litigation Branch
U.S. Customs and Border Protection ("CBP")
90 K Street, NE
Washington, D.C. 20029

Re:   *FOIA Administrative Appeal—File No. CBP-2017-020151*

To Whom It May Concern:

I write to appeal U.S. Customs and Border Protection's ("CBP") final disposition of my client American Immigration Council's (the "Council") FOIA request.

### I.   Background of the FOIA Request

On December 23, 2016, the Council submitted a FOIA request to CBP requesting records relating to "the procedures used by CBP personnel . . . to process noncitizens who are seeking asylum and/or who express a fear of returning to their home countries, at or near ports of entry on the U.S.-Mexico border from January 2016 to the present."  *See* Exhibit A.  Receipt of the FOIA request was acknowledged by CBP on January 3, 2017.  *See* Exhibit B.

After receiving no substantive response to the FOIA request, on October 25, 2017, the Council filed a constructive denial appeal letter with CBP.  *See* Exhibit C.

On November 28, 2017, CBP's FOIA Appeals, Policy and Litigation Branch responded to the constructive denial appeal letter and assigned it appeal number CBP-AP-2018-010617 AML.  *See* Exhibit D.  The response remanded the FOIA request to CBP's FOIA Division so that the FOIA Division could provide an estimate of the length of time required to process the request within 20 days of the remand.

On January 10, 2018, having received no estimate from CBP, the Council requested mediation services from the Office of Government Information Services ("OGIS") to assist with the FOIA request.  *See* Exhibit E.  On February 21, 2018, I received an email from OGIS explaining that CBP was processing the request.  *See* Exhibit F.

The Council received CBP's final disposition of the FOIA request on February 22, 2018.  *See* Exhibit G.  The disposition noted that CBP had located 47 pages of responsive records, some of

which already were publicly available.  *See id.*  In total, CBP produced 16 pages of heavily redacted documents that CBP concluded were "partially releasable."  *See id.*

## II.  CBP Did Not Conduct an Adequate Search for Responsive Records

FOIA requires that an agency make more than a mere perfunctory search for documents; rather, the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Indeed, "the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted).  "The agency cannot limit its search to one or more places if there are additional sources that are likely to turn up the information requested." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks omitted).

Here, CBP failed to conduct an adequate search in response to the Council's FOIA request. The Council is aware of numerous responsive documents in CBP's possession that were not produced here, but were produced in a separate matter: *Al Otro Lado v. Duke*, 3:17-cv-02366-BAS (S.D. Cal).[1]  For example, in that case, CBP produced the following documents that were clearly responsive to the instant FOIA request, but that were not produced here:

- A memorandum and muster on "Processing Expedited Removal Cases," addressed to the Office of Field Operations' Directors of Field Operations and Director of Preclearance Operations, from the Acting Executive Director, Admissibility and Passenger, which discusses requirements to follow under the Immigration and Nationality Act's expedited-removal provisions.  *See* Exhibit H.  This document is responsive to category 1 of the FOIA request, which asks for criteria or standards that CBP personnel use to determine whether a noncitizen arriving at or near a port of entry on the U.S.-Mexico border is seeking asylum and/or has a fear of returning to his or her home country.

- A November 22, 2016 email discussing the existence of a "Mass Migration Plan" sent from the Supervisory Program Manager – Border Security, Laredo Field Office, to "Port Directors," which is responsive to at least category 2 of the FOIA request, which asks for the terms and conditions under which CBP personnel may turn away and/or delay the arrival of a noncitizen seeking asylum and/or who expresses a fear of returning to his or her home country at or near a port of entry on the U.S.-Mexico border.  *See* Exhibit I.

- A document describing problems encountered at the San Ysidro Port of Entry due to "unprecedented levels of foreign nationals asserting claims of fear of returning to their home countries" and processes for dealing with ongoing construction and increased

---

[1] The *Al Otro Lado* case originally was filed in the Central District of California, where it was assigned case number 2:17-cv-05111-JFW-JPR.  The case later was transferred to the Southern District of California, where it was assigned case number 3:17-cv-02366-BAS (S.D. Cal.).  Some of the produced documents reference the original Central District case number.

migrant flow, including detailed discussions of metering[2] and its use.  *See* Exhibit J.  This document is responsive to at least category 3(a) of the FOIA request, which requests policies, procedures, recommendations, or guidelines relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their home countries, including scheduling appointments for such individuals to present themselves at a port of entry.

- A September 14, 2016 memorandum from the CBP Office of Field Operations, Admissibility and Passenger Programs and Operations – Incident Management Division, describing the 2016 surge of Haitian immigrants seeking entry to the United States at the San Ysidro Port of Entry, including a description of the shelter and metering system.  *See* Exhibit K.  This document is also responsive to at least category 3(a) of the FOIA request.

- A November 12, 2016 email from the Assistant Director of Field Operations – Border Security, Laredo Field Office to "Port Directors" discussing a request from the Commissioner and Deputy Commissioner of CBP to begin metering and turn away asylum seekers after a certain number of asylum seekers are processed each day.  *See* Exhibit L.  This document is clearly responsive to at least category 3(e) of the FOIA request, which requests policies, procedures, recommendations, or guidelines relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who are seeking asylum and/or express a fear of returning to their home countries, including directing such individuals away from a port of entry.

Given the existence of these, and many other, responsive documents, it is clear that CBP did not use methods "reasonably calculated to uncover all relevant documents."  *Weisberg*, 745 F.2d at 1485; *see also Valencia-Lucena*, 180 F.3d at 326 (noting that a search's adequacy may be called into substantial doubt by "well defined requests and *positive indications of overlooked materials*" (emphasis added; quotation marks omitted)).[3]

CBP also provided no indication of how it conducted its search, including where it looked for responsive documents and whether it limited its search to specific places or types of documents.  The Council's FOIA request asked for records from all of CBP, defining CBP to include "CBP headquarters offices, including any divisions, subdivisions or sections therein; CBP field operations offices, including any divisions, subdivisions or sections therein; CBP

---

[2] "Metering" refers to a practice of processing only a certain number of asylum seekers each day at a given U.S. port of entry and requiring any additional asylum seekers to wait to be processed on a later day.

[3] Given CBP's prior disclosure of these other documents, CBP must produce these documents to the Council.  *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997) ("FOIA does not permit selective disclosure of information only to certain parties, and . . . once the information is disclosed . . . it must also be made available to all members of the public who request it."); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 ("It must be remembered that once there is disclosure, the information belongs to the public.").

offices at ports of entry, including any divisions, subdivisions or sections therein; and/or any other CBP organizational structures." *See* Exhibit A at 1 n. 2.

Given the above, CBP's contention that it located only 47 total pages of responsive records stretches credulity in light of the scope of the request—which spans over two years—and the significant amount of work CBP conducts along the U.S.-Mexico border. Indeed, when CBP's FOIA Appeals, Policy and Litigation Branch remanded the Council's initial appeal to CBP, it noted that because of the broad nature of the request, CBP may take longer than FOIA prescribes to reply to the request. CBP's small production evinces no more than an inadequate, perfunctory search that fails to meet FOIA requirements.

Please respond to this appeal within 20 business days in accordance with 5 U.S.C. § 552(a)(6)(A)(ii).

If you have any questions regarding the FOIA Request or this administrative appeal, please contact me by email at dportnoi@omm.com or by telephone at 213-430-7699.

Sincerely,

Dimitri D. Portnoi

DDP

Attachments

cc: Karolina Walters, American Immigration Council